# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-3386

_____

| | | |
|---|---|---|
| Daniel L. Habhab; Mustiphie A. Habhab; William M. Habhab; Habhab's Towing, Auto & Truck Repair, | * * * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Southern District of Iowa. |
| William Hon; Gary Niewsma; Rick Lampe; Randy Kunert; Robert Battles; Karl Kluender; Kirk Lundgren; Todd Aarhus; Ryan Aarhus; Michael Current; David Overton; Jon Borg; Glen Swanson; Jason Zoske; Sam Zoske; Heath Hove; Shane Antle, | * * * * * * * * * * | |
| Appellees. | * | |

_____

Submitted: May 16, 2008
Filed: August 7, 2008

_____

Before RILEY, HANSEN, and ARNOLD, Circuit Judges.

_____

RILEY, Circuit Judge.

Daniel L. Habhab and members of his family (Habhab), who are of Lebanese descent, operate a towing and car repair shop in Ames, Iowa. Habhab filed a lawsuit against several Iowa state patrol troopers claiming violations of equal protection, as well as violations of procedural and substantive due process. The state troopers moved for summary judgment, and the district court[1] granted the motion. Habhab appeals. We affirm.

## I.    BACKGROUND

The relevant facts are undisputed. Habhab operates a towing and auto repair shop and, in an effort to promote his business, Habhab drives a Sport Utility Vehicle (SUV) to monitor Interstate 35 near Ames and Ankeny, Iowa. Habhab offers towing and repair services to stranded motorists, regardless of whether or not state patrol troopers requested Habhab's assistance.

Habhab's business practices have caused several state patrol troopers to express concern. The troopers claim some of Habhab's business practices were unsafe. One of the safety concerns expressed by the troopers is Habhab's vehicles sometimes cut across the median. Habhab disagrees with the state troopers' safety concerns and states Habhab's patrolling of the highways provides a valuable service to motorists.

Pursuant to policy and practice, the state troopers ask a stranded motorist if the motorist has any preference in a tow truck company. If the motorist does not have a preference (as is usually the case), the troopers direct the dispatcher to select and call a tow truck company. Dispatchers attempt to distribute the work evenly among the tow truck companies on their list, which includes Habhab's business.

---

[1]The Honorable Thomas J. Shields, Chief Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

In April 2002, the sheriff in Story County (the county where Habhab's business is located) wrote a letter to Habhab stating, in part:

> I can appreciate ones efforts to generate business, however, responding to accident scenes without being called creates an unsafe environment for all involved.
>
> I ask that your employees do not respond to accident scenes without first being called or requested. Complying with this request will enhance everyone's safety and allow for deputies to investigate an undisturbed accident scene.

In May 2002, there was an incident between state trooper Karl Kluender (Officer Kluender) and Daniel Habhab. The problem arose when Officer Kluender approached a vehicle stopped in the median and Habhab's SUV was already at the scene offering services. Officer Kluender approached Daniel Habhab and asked, "You get called to come out here or you just drive by?" When Daniel Habhab acknowledged not being called, Officer Kluender told him to "take off," and "[w]e'll call when we need a tow truck." Daniel Habhab left the scene. After another tow truck company operator arrived at the scene, Officer Kluender commented to the tow operator that Habhab previously "filed a complaint on [certain] officers . . . because they didn't use him," and Officer Kluender stated, "we're racists too—cause he's from the Middle East, he's Arab, so . . . you got a throw that card into it too, you know."

Officer Glen Swanson (Officer Swanson) testified he heard a rumor on one occasion probably from Officer Kluender that Habhab was possibly involved in criminal activity and also heard Officer Kluender refer to Habhab and his employees as Arabs. As a result of his comments, Officer Kluender received a letter of reprimand in December 2002.

Habhab filed suit against the state troopers charging the troopers violated Habhab's constitutional rights. Habhab's allegations included, among other things,

claims the state troopers encouraged potential customers to hire other tow truck companies, ordered Habhab to leave a towing site despite having been retained, and threatened Habhab with criminal charges if he continued to follow his business practices. Claiming the state troopers' actions interfered with Habhab's towing business and were based on ethnicity and national origin, Habhab asserted violations of (1) equal protection, (2) procedural due process, and (3) substantive due process.

## II.  DISCUSSION

"We review de novo the district court's grant of summary judgment, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party." Reasonover v. St. Louis County, Mo., 447 F.3d 569, 578 (8th Cir. 2006) (citation omitted). If there is "no genuine issue of material fact [] and the moving party is entitled to judgment as a matter of law[,] . . . . [w]e may affirm summary judgment for any reason supported by the record, even if it differs from the rationale of the district court." Id. at 578-79 (citations and internal quotation marks omitted).

Habhab claims that on several occasions state troopers asked stranded drivers who were prospective customers, "are you sure you want to use these people [Habhab]" or "do you want me to call a service you want to use?" Habhab contends each question by the troopers "implies that the driver should not choose the Habhabs . . . or that the driver should change his or her mind if the Habhabs have already been hired." Habhab claims these inquiries, plus the troopers' requests that Habhab leave the scene when he had not been called, together with Officer Kluender's comments and the troopers calling other towing companies when Habhab was already at the scene, constitute violations of equal protection and procedural and substantive due process rights. We disagree.

### A.  Equal Protection Claim

With respect to Habhab's equal protection claim, Habhab argues the state troopers treated him differently because of his ethnicity. Habhab's argument has no

merit. "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000) (citation omitted). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." Id. Habhab must, as a threshold matter, demonstrate the state troopers treated Habhab less favorably than similarly-situated owners of other towing companies based upon Habhab's ethnicity. Id.

Habhab did not show similarly situated Caucasian or different ethnic tow truck businesses were treated more favorably, thus, Habhab's claim must fail. The record does not indicate any other owners of a towing company, whether Caucasian or of a different race or ethnicity, were patrolling the highways as Habhab did, or that the state troopers reacted differently to other towing companies by not objecting to them conducting business with stranded motorists. Habhab's general and conclusory allegations reflect nothing but tension between the state troopers and Habhab because of Habhab's business practices. The troopers see Habhab's business practices as dangerous— neither race nor ethnicity was shown to be an issue on this record. Even Officer Kluender's taped reference that Habhab was from the "Middle East, he's Arab" does not amount to constitutional racial discrimination. Officer Kluender's statement was not pervasive or severe enough to amount to racial harassment; thus, it does not violate the Fourteenth Amendment. See Blades v. Schuetzle, 302 F.3d 801, 805 (8th Cir. 2002) (declaring, "we believe that the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the [F]ourteenth [A]mendment.").

The same explanation applies with respect to the troopers' inquiries of stranded motorists: "are you sure you want to use these people" or "do you want me to call a service you want to use?" These questions alone do not demonstrate the troopers were racially biased against Habhab, and do not violate the Fourteenth Amendment. These inquiries reflect the troopers' intention to communicate to the motorists they had other

options, because other towing services were available and the motorists did not have to use Habhab simply because Habhab was the first at the scene.  These statements allowed motorists to choose from other available services.  Motorists could contact motorist clubs or their insurers to locate towing companies.  Some motorists even choose to leave their automobiles on the road because they cannot afford a tow.  Advising motorists they have options may be beneficial to the stranded motorists.[2]  The district court properly entered summary judgment in favor of the state troopers on Habhab's equal protection claim.

### B.    Procedural Due Process Claim

With respect to Habhab's procedural due process claim, Habhab essentially claims defendants interfered with his right to earn a living by providing towing services.  "The Due Process Clause of the Fourteenth Amendment guarantees that no state shall . . . deprive any person of life, liberty, or property, without due process of law."  Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing U.S. Const. amend. XIV, § 2) (internal quotation marks and alterations omitted).  "Property interests protected by due process are not created by the Constitution but, rather, are created and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law."  Id. (citation and internal quotation marks omitted).  "Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process."  Id. (citation omitted).

Habhab's procedural due process argument fails for two reasons.  First, "[d]iscretionary policies [] do not bestow upon individuals protected property interests."  Beggs v. Gilkey, 178 F.App'x. 593, 595 (8th Cir. 2006) (per curiam) (unpublished) (citing Forrester, 397 F.3d at 1056).  The inclusion of Habhab's name

---

[2]Habhab also claims the state troopers provided "traffic control"services to other towing companies, but not to Habhab.  This claim is unfounded because Habhab does not specifically explain who received this service and what this service entailed.

on a list of towing companies used by dispatchers does not give Habhab a property interest in obtaining any particular work, because the dispatchers have reasonable discretion in assigning the towing services to any of the towing companies on the wrecker list. See id. The district court did not err in determining Habhab did not have a property interest.

Second, the district court properly noted Habhab had not been deprived of any liberty interest. "The Constitution only protects [the] liberty [to follow a chosen profession free from unreasonable governmental interference] from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . . It is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." Piecknick v. Com. of Pa., 36 F.3d 1250, 1259-60 (3d Cir. 1994) (citations and internal quotation marks omitted). The troopers' statements do not constitute a deprivation of Habhab's right to pursue his chosen occupation.

"Finding no protected interests, we need not decide what, if any, procedural process was due." Forrester, 397 F.3d at 1057. Furthermore, Habhab does not seek process, such as a hearing. Rather, Habhab seeks money. When claimants seek money, not process, "they must litigate in the proper forum," in state court, not in federal court. Goros v. County of Cook, 489 F.3d 857, 860 (7th Cir. 2007).

## C.    Substantive Due Process Claim

"Before official conduct or inaction rises to the level of a substantive due process violation, it must be so egregious or outrageous that it is conscience-shocking." Forrester, 397 F.3d at 1058 (citation, internal quotation marks and alteration in the original omitted). Nothing in the record supports an allegation the state troopers' conduct was egregious or rose to the "conscience-shocking" level. Habhab's claim that the state troopers' actions interfered with contracts he already had with motorists seeks only to vindicate a claim for tortious interference with the

contracts. Habhab cannot avail himself of federal constitutional principles of substantive due process to pursue such a claim. See Snow v. Ahne, 53 F.App'x. 799, 799 (8th Cir. 2003) (per curiam) (unpublished).

The district court also correctly found the state defendants were entitled to qualified immunity. Section 1983 provides a cause of action against government officials who deprive persons of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Government officials are entitled to a dismissal "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 526 (8th Cir. 2007) (citation and internal quotation marks omitted). "In addressing an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If the allegations and undisputed facts do not amount to a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Having determined none of Habhab's claims amount to a constitutional violation, defendants are entitled to qualified immunity.

The district court also correctly concluded Habhab's conspiracy claim failed because, among other reasons, Habhab could not meet the first prong of this charge. To establish conspiracy under § 1985, Habhab must first prove defendants conspired. See Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005) (citation omitted). Habhab pled the state troopers "were at all times relevant . . . acting within the scope of their employment," thus, they were acting as a single person in the eyes of the law. However, a government entity or corporation cannot conspire with itself. See id.[3] In

_____

[3]Habhab postulates a contradictory conspiracy exception, proposing the state troopers acted outside the scope of their employment for personal reasons. Such a theory is both baseless and inconsistent with Habhab's other allegations.

addition, "[a] conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators." Id. (citation omitted). Nothing in the record manifests a meeting of the minds occurred among the state troopers "to inflict a wrong against or injury upon" Habhab. Rotermund v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973) (citation and internal quotation marks omitted). The record reflects only isolated incidents of troopers reacting to Habhab's business practices. Habhab's conspiracy claim fails as a matter of law.

## III.    CONCLUSION

We affirm the judgment of the district court in its entirety.

_____