In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-1621

JOHN G. REGET,

*Plaintiff-Appellant,*

*v.*

CITY OF LA CROSSE, JOHN MEDINGER,
LARRY KIRCH, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-238—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 12, 2009—DECIDED FEBRUARY 8, 2010

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. The City of La Crosse and John
Reget have had a long, acrimonious relationship
stemming from Reget's operation of a business that
doubles as a body shop and an automobile-restoration
company. The City's junk-dealer ordinance required
Reget to comply with certain building and safety-code

provisions and to fence his outdoor auto storage from the view of his surrounding residential neighbors. Reget claims the City singled him out for enforcement of this ordinance and also that it discriminated against him in connection with a proposed rezoning plan, all in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. He filed this lawsuit seeking damages and injunctive relief, but the district court granted the defendants' motion for summary judgment. Because Reget has not shown that the City has treated him differently than other similarly situated businesses, we affirm.

## I.  Background

Reget has operated John's Auto Body in the City of La Crosse, Wisconsin, since 1975. The conflict between Reget and the City dates back to 1980, when the City condemned his old building, compensated him for a move to his present location, and gave him an additional $14,000 to remodel his current building. On receipt of this compensation, Reget signed a release waiving all claims against the City arising from the condemnation and relocation. Since then, however, Reget is convinced the City is trying to drive him out of business. In the district court, Reget made numerous claims of mistreatment at the hands of city officials, but on appeal he limits his argument to three: He claims that the City selectively enforced its junk-dealer ordinance against him, targeted him for rezoning in a discriminatory fashion, and selectively enforced its noise regulations.

The dispute between Reget and the City flared up in the early 1990s, when the City cited Reget several times for violating the junk-dealer ordinance. This ordinance imposes a variety of obligations on junk dealers. It requires, among other things, that junk dealers obtain a license; it also imposes certain building and safety requirements on junk dealers, and limits when and where they can operate. *See* LA CROSSE, WIS., CODE § 20.12. Most important for purposes of this litigation, the ordinance requires that any junk dealer who stores two or more junked vehicles outdoors for more than 30 days build an opaque fence shielding the vehicles from public view.[1] *Id*. § 20.12(F). Reget was cited three times between 1991 and 1994 for violating the junk-dealer ordinance. The parties have not told us which provisions of the ordinance Reget allegedly violated, but it is undisputed that all three citations were eventually dismissed.

The next dispute between the parties arose in 1995-1996 when the City attempted to rezone Reget's property from "heavy industrial" to "commercial," a move that would have forced Reget to relocate his business yet

---

[1] It is unclear exactly when this fence requirement was added to the ordinance. Reget claims it was passed in 1991 in a resolution he says city officials nicknamed the "Reget Resolution." The City disagrees but does not specify when the fence requirement was adopted. The district court thought the ordinance was passed in 1993, but we cannot locate any record evidence supporting that statement. Whether it was adopted in 1991 or 1993, it is undisputed that Reget never complied with the ordinance's fence requirement.

again. The proposed reclassification of Reget's property was part of a comprehensive rezoning of the City's north side, and in connection with this project, more than 100 properties were rezoned. Reget contends, however, that his property was the only heavy industrial property targeted for rezoning. He complained, and the City eventually agreed to abandon its attempt to rezone Reget's property in exchange for his agreement to abide by the junk-dealer ordinance. More specifically, in a covenant signed in 1997, Reget promised to install a fence on several sides of his business to hide his outdoor auto storage from the view of nearby residences. He also agreed to abide by the City's noise restrictions by limiting his nighttime operations. The City, in turn, agreed that Reget's property would remain zoned for heavy industrial use. In addition, to allay Reget's persistent complaints that the City was selectively enforcing its ordinances, the City agreed to enforce any ordinance violations committed by Reget's neighbors.

Reget never installed the fence. He says he was excused from doing so because the City failed to live up to its agreement to enforce ordinance violations—in particular, noise violations—that he claimed his neighbors were committing. In 2003 Reget received a fourth citation, this time for violating a building-code provision of the junk-dealer ordinance. Again, the parties compromised. The City agreed to install a fence on Reget's property itself, and Reget agreed to repay the City for the cost of the fence over a period of fifteen years. Based on this agreement, the 2003 citation was dismissed.

In 2006 Reget filed this lawsuit alleging, among other claims, that the City and various city officials violated his equal-protection rights by selectively enforcing its ordinances against him and by targeting him for rezoning. The defendants moved for summary judgment. The district court granted this motion, holding that Reget had failed to submit evidence showing that similarly situated junk dealers received more favorable treatment from the City. This appeal followed.

## II. Discussion

We note first that although most of the events at issue in this dispute are quite dated, the defendants did not assert a statute-of-limitations defense. This surprises us. Under the applicable statute of limitations supplied by Wisconsin law, Reget had six years to bring a claim. *See* WIS. STAT. § 893.53 (governing actions to recover for violations of injuries to noncontractual rights); *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989) (applying section 893.53 to § 1983 equal-protection claims filed in Wisconsin). Reget filed this lawsuit in 2006, but nearly all of the events in this case occurred in the early and mid-1990s. The only event falling within the statute of limitations was the 2003 citation, and this citation was dismissed when the City and Reget agreed that the City would install a fence around Reget's property and assess him for the cost in installments spread over fifteen years. However, a statute-of-limitations defense is waived if it is not raised, *see Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000), so we will proceed to the merits.

The district court granted the defendants' motion for summary judgment, holding that Reget failed to establish that a similarly situated business was treated more favorably. Our review is de novo, *see Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008), and summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(c). We construe all facts in the light most favorable to Reget and draw all reasonable inferences in his favor. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). However, when the nonmoving party bears the burden of proof, as Reget does here, he must demonstrate the existence of a genuine issue of material fact to defeat summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986).

The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called "class of one." *See Engquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2153 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The class-of-one theory of equal protection "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." *Engquist*, 128 S. Ct. at 2155. A plaintiff alleging a class-of-one equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there

is no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564; *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).

Some of our cases have also required proof that the state action was motivated by illegitimate animus against the plaintiff, while others have treated illegitimate animus as an alternative basis for class-of-one liability. *See Srail*, 588 F.3d at 944 (comparing our "divergent class-of-one precedent"); *Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009); *United States v. Moore*, 543 F.3d 891, 898 (7th Cir. 2008) (collecting cases). We need not reconcile the conflict here. Reget's class-of-one claim fails at the first step in the analysis. To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects. *Srail*, 588 F.3d at 945; *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005). While this is not a "precise formula," it is nonetheless "clear that similarly situated individuals must be very similar indeed." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). We agree with the district court that Reget has failed to show that a similarly situated auto-salvage business was treated more favorably.

We begin with Reget's claim that the City singled him out for enforcement of the junk-dealer ordinance. That ordinance requires, among other things, that "[t]he premises of a junk dealer" be enclosed by a "proper fence." LA CROSSE, WIS., CODE § 20.12(F). The ordinance applies to

a junk dealer who stores two or more junked auto-
mobiles outside of any building for more than 30 days. *Id.*
§ 7.01(V) (Regulations for Storage of Junked Automobiles
and Parts). Reget maintains that the City intentionally
targeted him for enforcement of this ordinance by:
(1) citing him three times between 1991 and 1994 for
violating the ordinance (the specific nature of these
violations is unclear); and (2) "requiring" him to fence
his property in exchange for settlement of the zoning
dispute. Reget has failed, however, to establish that he
was treated differently than a similarly situated junk
dealer.

In his deposition testimony, Reget identified several
other auto-repair shops in La Crosse that he claimed
were not cited for violating the junk-dealer ordinance.
But he did not establish that these businesses had
actually violated the ordinance. That is, he did not
produce evidence that any of the comparator businesses
engaged in the outdoor storage of two or more junked
vehicles for more than 30 days and failed to comply
with the fence requirement in the junk-storage ordinance.
Nor did he produce evidence that the comparator junk
dealers violated the ordinance in some other way yet
were not cited. Moreover, the City's three citations
against Reget were for unspecified violations of the
ordinance and were ultimately dismissed; this
makes comparison with other junk dealers in the City
impossible. Finally, Reget voluntarily agreed to build
a fence around his property as a part of the 1997 settle-
ment of his rezoning dispute with the City. We cannot
see how a voluntary agreement can support a claim of
class-of-one equal discrimination.

Reget also contends that the City singled him out for rezoning, but the record does not support this contention. The City rezoned more than 100 properties as part of a rezoning project encompassing the City's north side. Reget argues that none of his immediate neighbors were targeted for rezoning and that his was the only property in the rezoning initiative that was slated to be reclassified from a heavy industrial to a commercial use. We cannot see how either point matters. Even if he was the only property owner in his immediate neighborhood affected by the City's rezoning effort, Reget can hardly claim he was targeted for discriminatory treatment when 100 properties were ultimately rezoned. Regardless, he has not identified a similarly situated comparison property—in his immediate neighborhood or otherwise—that was treated more favorably. Reget simply asserts, without evidence, that his was the only property that city planners wanted to move from a heavy industrial to a commercial use. There is no evidence in the record regarding the prior zoning classifications of the 100 properties that were slated for rezoning.

Moreover, and significantly, Reget's property was never rezoned. The City abandoned its effort to reclassify Reget's property in exchange for his agreement to build a fence and abide by the City's noise ordinance. Reget does not identify—and we have not found—any cases suggesting that a class-of-one equal-protection claim premised on an allegation of discriminatory zoning can be maintained when the plaintiff's property is never in fact rezoned. *Cf. Barstad v. Murray County*,

420 F.3d 880, 884 (8th Cir. 2005) (finding no equal-protection violation when county reversed a recent rezoning).

Finally, Reget argues that the City discriminated against him by "requiring" him to comply with the noise ordinance while refusing to enforce the ordinance against his neighbors. Again, the basis of this claim is the 1997 covenant in which Reget agreed to reduce his nighttime operations in order to comply with the City's noise ordinance and the City, in turn, agreed to enforce ordinance violations committed by Reget's neighbors. Reget says he complained to the City about numerous noise violations from trucks idling at a neighboring motel and that the City refused to cite the motel. This argument has things backward. To establish a claim of selective enforcement, Reget had to show that *he* was cited under the ordinance and a similarly situated ordinance violator was not. But he has no such evidence. The 1997 covenant does not establish that the City selectively enforced the ordinance against him. Reget had an obligation to comply with the City's noise ordinance regardless of the promises he made in that settlement; the 1997 agreement imposed no new obligations on either party and seems designed simply to encourage Reget's compliance with the City's ordinances.

Accordingly, the district court properly entered summary judgment for the defendants, and the judgment dismissing Reget's claims is AFFIRMED.