# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1435

_____

Mark Robbins; Gail Robbins; I-44 Truck Center and
Wrecker Service, LLC; I-44 Wrecker Service, LLC

*Plaintiffs - Appellants*

v.

Randy Becker, Sr.; James Cox; Ryan A. Burckhardt; Daniel E. Dicus; Travis
Inman; Ronald Johnson; Jeremie Keathely; Lee A. Kenley; Keith Lichay; Justin
McCullough; Brent Moore; John Oliveras; Duane L. Robinson; Rhonda Shanika;
John Does, Police Officers; John Does, Dispatchers; Jane Does, Dispatchers; each
in their individual capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2015
Filed: July 27, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Mark and Gail Robbins, the owners and operators of I-44 Truck Center and
Wrecker Service, LLC and I-44 Wrecker Service, LLC (collectively, the Robbinses),

appeal the district court's[1] adverse grant of summary judgment to fourteen individual officers and supervisors (officers) of the Missouri State Highway Patrol (MSHP) on the Robbinses' claim that the officers conspired to interfere with the Robbinses' towing and wrecker business in violation of federal law.[2] With jurisdiction under 28 U.S.C. § 1291 in tow, we affirm.

## I.    BACKGROUND

For years, the Robbinses have provided towing and wrecker services along the Interstate 44 corridor in eastern Missouri and the surrounding areas. Before June 2006, MSHP Troop C and Troop I, pursuant to MSHP policy, each used a "rotation list" of approved towing and wrecking companies to determine which company the officer at the scene of a disabled vehicle would call if the vehicle owner had no preference. The Robbinses were on both lists until Troop C removed them, reportedly in part because Mark Robbins had been criminally charged with shooting at a competitor's truck in 1999. The Robbinses were later removed from Troop I's list as well.

Relying on an anonymous phone call Mark purportedly received from someone claiming to work for the Robbinses' competitor, the Robbinses allege the criminal charge against Mark resulted from a "sham investigation." According to the Robbinses, their competitor used a personal friendship with defendant John Oliveras, an MSHP officer with whom Mark had a confrontation in the past, to drive the investigation in an effort to harm the Robbinses' business. A jury acquitted Mark in 2003, but the Robbinses were never reinstated to either list.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

[2]The Robbinses do not appeal the district court's decision to decline to exercise supplemental jurisdiction over their five state law claims.

In November 2005, the Robbinses sued the MSHP in Missouri state court, seeking reinstatement to the lists. On June 20, 2006, the state court instead determined the MSHP lacked statutory authority to create a rotation list at all. The court permanently enjoined the MSHP "from creating, maintaining, or enforcing a rotation list of towing or wrecking operators for determining which towing operator or wrecker service will remove a disabled vehicle from the roadways or shoulders of roadways" and "further enjoined [the MSHP] from using such a list to interfere with the [Robbinses'] business operations."

The officers assert they have complied with the state court order, using the Robbinses' services as well as those of other companies "in the exercise of their discretionary authority controlling and clearing accident scenes." According to the officers, absent mitigating circumstances, the officers leave the choice of towing and wrecker services to the vehicle owner. If the owner has no preference, the officer at the scene determines which company to call "based primarily on location of the accident and towing service availability." The officers aver they also consider other factors, including the need for expedited removal or specialized equipment, reputation and prior interactions with tow personnel, road conditions, and other situation-specific concerns.

Convinced the officers are not following MSHP policy, the Robbinses allege the officers conspired to deny them work, disparage their company, and interfere with the Robbinses' relationships with potential and existing customers. In the Robbinses' view, the officers' actions toward the Robbinses and their customers "show a real and tangible conspiracy by the individual [officers] to drive" the Robbinses out of business.

On August 20, 2010, the Robbinses sued the officers in their individual capacities in federal district court, alleging (1) violations of due process and equal protection under the Fourteenth Amendment asserted under 42 U.S.C. § 1983;

(2) conspiracy to violate the Robbinses' constitutional rights; (3) violations of the Sherman Act, 15 U.S.C. §§ 1, 2; and (4) various related state law claims. On March 2, 2012, the officers moved for summary judgment, claiming the Robbinses did not state actionable claims and the officers were entitled to qualified immunity. The district court summarily denied the motion.

On remand after the officers' successful interlocutory appeal, see Robbins v. Becker, 715 F.3d 691, 695 (8th Cir. 2013) (remanding for additional analysis of qualified immunity), the district court granted judgment to the officers on their federal claims and declined to exercise supplemental jurisdiction over the Robbinses' state law claims. The Robbinses appeal the judgment on their federal claims.

## II.  DISCUSSION
### A.  Standard of Review

"We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). We may affirm "for any reason supported by the record, even if different from the reasons given by the district court." Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013).

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," In re Citizens Loan & Sav. Co., 621 F.2d 911, 913 (8th Cir. 1980), "but must identify and provide evidence of 'specific facts creating a triable controversy.'" Howard, 363 F.3d at 800 (quoting Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999)).

**B.    Constitutional Claims—Qualified Immunity**

The Robbinses argue the district court erred in granting summary judgment on their constitutional claims based on qualified immunity. "Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Chambers, 641 F.3d at 904 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006). To survive summary judgment, the Robbinses must present sufficient facts, viewed in their favor, to show each "officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 227 (2009). The Robbinses have not done that.

**1.    Substantive Due Process**

The Robbinses claim the officers' conduct violated their Fourteenth Amendment substantive due process rights. "To breach the shield of qualified immunity by establishing a 'violation of substantive due process rights by an . . . official, [the Robbinses] must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the . . . official was shocking to the contemporary conscience.'" Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012) (first and third alterations in original) (quoting Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007)).

The Robbinses propose to meet the first part of this test by asserting the officers interfered with the Robbinses' "constitutionally protected property interest in their business expectancy in the towing and wrecker business" and deprived the Robbinses of their "fundamental constitutional right to make a living and engage in their chosen occupation." In large measure, the Robbinses' substantive due process claims track those raised in Habhab v. Hon, 536 F.3d 963, 966 (8th Cir. 2008), but

without Habhab's serious allegations of ethnic discrimination. In Habhab, we decided a towing company operator, who alleged state law enforcement officers "interfered with his right to earn a living" by (1) encouraging potential towing customers to use other companies; (2) ordering him to leave a towing site; and (3) disparaging his business, did not have a constitutionally protected property or liberty interest to support his due process claims. Id. at 966-68.

In rejecting Habhab's proposed property interest, we observed, "'Property interests protected by due process are not created by the Constitution but, rather, are created and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law.'" Id. at 968 (quoting Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005)). Reiterating that discretionary policies do not create a protected property interest, we concluded "[t]he inclusion of Habhab's name on a list of towing companies used by dispatchers does not give Habhab a property interest in obtaining any particular work, because the dispatchers have reasonable discretion in assigning the towing services to any of the towing companies on the wrecker list." Id.; accord Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1215 (11th Cir. 1995) (concluding, based on towing rotation list case law in other circuits, that a towing company does not have a constitutionally protected property interest in remaining on a rotation list unless the company "'has alleged a claim of entitlement supported by a formal and settled source such as a state statute or regulatory scheme'" (quoting Blackburn v. Marshall, 42 F.3d 925, 938 (5th Cir. 1995))).

Here, the Missouri state court order abolishing the MSHP's use of rotation lists arguably gave the officers more discretion than the officers in Habhab. But the Robbinses contend the state court order enjoining the MSHP—and not the individual officers—from using a rotation list created a constitutionally protected property interest in their towing and wrecker business. We are not persuaded. "To have a property interest in a benefit, a person clearly must have more than an abstract need

or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Nothing in the order's language—which altered MSHP policy to give the individual officers greater discretion to choose a towing company when the customer has no preference—gave the Robbinses "a legitimate claim of entitlement" to any particular towing work. Id.

With respect to the Robbinses' asserted liberty interest, we explained in Habhab that the Fourteenth Amendment protects "'the liberty to pursue a particular calling or occupation, . . . not the right to a specific job.'" Habhab, 536 F.3d at 968 (quoting Piecknick v. Com. of Pa., 36 F.3d 1250, 1259 (3d Cir. 1994)). Because none of the officers in Habhab deprived the towing company operator of the "right to pursue his chosen occupation," his due process claims failed. Id. The same is true here. At most, some of the individual officers' alleged conduct interfered with the Robbinses' ability to perform certain towing jobs. The officers did not deprive the Robbinses of their right to make a living or pursue their chosen occupation.

The Robbinses also have not shown the challenged conduct was "'so egregious or outrageous that it is conscience-shocking.'" Id. (quoting Forrester, 397 F.3d at 1058).

> Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise. Substantive due process is concerned with violations of personal rights so severe so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power.

Winslow, 696 F.3d at 736 (internal marks and quotations omitted). The Robbinses' allegations do not shock the conscience. See Habhab, 536 F.3d at 968 (concluding

the plaintiff did not allege facts that shocked the conscience where the plaintiff alleged the officers interfered with his towing business because of ethnic prejudice).

### 2. Equal Protection

The Equal Protection Clause provides, "No State shall . . . deny to any persons within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352 (1918). Unequal treatment of "'those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" Batra v. Bd. of Regents of Univ. of Neb., 79 F.3d 717, 721 (8th Cir. 1996) (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)). "The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." Sunday Lake, 247 U.S. at 353. Without more, "opprobrious epithets" like "'willful' and 'malicious'" and characterizations of an officer's conduct "as an unequal, unjust, and oppressive administration of the laws" are not enough. Snowden, 321 U.S. at 10.

The Robbinses allege the officers violated their equal protection rights by treating them "differently than multiple other towing and wrecker services." See, e.g., City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (explaining equal protection is "essentially a direction that all persons similarly situated should be treated alike"). The Supreme Court recognizes such a "class of one" equal protection claim—meaning "the plaintiff did not allege membership in a class or group"—"where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); accord Barstad v. Murray Cnty., 420 F.3d 880, 884 (8th Cir. 2005).

This class-of-one theory does have limits.  In light of the importance of  "a clear standard against which departures, even for a single plaintiff, [can] be readily assessed," the class-of-one theory may not apply to

> forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.

Engquist v. Or. Dep't of Agric., 553 U.S. 591, 602-04 (2008) (illustrating the point with a hypothetical involving a traffic officer—on a busy highway frequented by speeders—exercising the discretion inherent in deciding which vehicle operator to issue a speeding ticket).  Applying Engquist's rationale to a "police officer's decisions regarding whom to investigate and how to investigate," we held "that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim" because investigative decisions "necessarily involve discretion."  Flowers v. City of Minneapolis, Minn., 558 F.3d 794, 799-800 (8th Cir. 2009); cf. Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274 (11th Cir. 2008) (extending Engquist's reasoning to circumstances "involving a government-contractor relationship").  But cf. Hanes v. Zurick, 578 F.3d 491, 495 (7th Cir. 2009) ("Engquist does not support the officers' argument that malicious police conduct is off-limits from class-of-one claims.").

The Robbinses and the officers dispute whether Engquist and Flowers preclude the Robbinses' class-of-one claim because the officers' decisions to refer jobs to particular towing companies involved discretion.  We need not decide that thorny issue today because, even if we assume the Robbinses' claim is cognizable under

Engquist and Flowers, the Robbinses have not provided sufficient "evidence of 'specific facts creating a triable controversy,'" Howard, 363 F.3d at 800 (quoting Jaurequi, 173 F.3d at 1085), as to whether they suffered "intentional and arbitrary discrimination," Sunday Lake, 247 U.S. at 352.

"The threshold inquiry in [the class-of-one] equal protection [claim the Robbinses assert] is whether the [Robbinses are] similarly situated to others who allegedly received preferential treatment." Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000). "Absent [such] a threshold showing[,] . . . the [Robbinses do] not have a viable equal protection claim." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010); accord Bills v. Dahm, 32 F.3d 333, 335 (8th Cir. 1994) (explaining equal protection comparators must be similarly situated "in all relevant respects").

"Identifying the disparity in treatment is especially important in class-of-one cases." Barstad, 420 F.3d at 884. "A class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir. 2008) (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004)).

The Robbinses do not meet this demanding standard. The Robbinses complain the officers interfered with their business and treated them unfairly, but fail to allege and prove facts showing they were similarly situated to other towing and wrecker services, or that those companies were treated more favorably under similar circumstances. Although the Robbinses nominally identify Chuck's Towing, Miles Towing, and C&C Towing as purported comparators, they do not provide any

-10-

supporting details. Merely "saying the magic words is not enough," Charleston v. Bd. of Trs. of Univ. of Ill. at Chi., 741 F.3d 769, 775 (7th Cir. 2013), to state a viable equal protection claim.[3]  See Habhab, 536 F.3d at 967.

### 3.      Conspiracy

The Robbinses' failure to establish their substantive due process and equal protection claims is also fatal to their claim that the officers conspired to violate their constitutional rights.  See 42 U.S.C. § 1985(3).  "Absent a constitutional violation, 'there is no actionable conspiracy claim.'"  Slusarchuk v. Hoff, 346 F.3d 1178, 1183 (8th Cir. 2003) (quoting Cook v. Tadros, 312 F.3d 386, 388 (8th Cir. 2002)).

### C.      Sherman Act

The Robbinses allege the officers and other tow companies conspired "to restrain trade and monopolize trade in interstate commerce" in violation of the Sherman Act, 15 U.S.C. §§ 1, 2.  Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States."  Id. § 1.  By its terms, section 1 requires concerted action to establish a violation.  Id.  Section 2 makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  Id. § 2.

---

[3]To the extent the Robbinses seek to assert an alternative claim of unequal treatment based on spite, malice, personal animus, or other improper motive by Oliveras or any other individual officer, we do not consider it.  Even if cognizable under the circumstances of this case, see Olech, 528 U.S. at 564-65 (declining to consider the role "subjective ill will" plays in a class-of-one claim); Flowers, 558 F.3d at 797-98 (assuming "a claim of selective investigation or harassment may . . . run afoul of the Constitution if it flows from [an] impermissible motive[]," but concluding the target of a police investigation did not produce a submissible equal protection claim), the Robbinses forfeited any such spite-and-malice claim by failing to present the claim or any supporting evidence to the district court.  See, e.g., ASARCO, LLC v. Union Pac. R.R., 762 F.3d 744, 753 (8th Cir. 2014).

To prevail on their Sherman Act conspiracy claims, assuming such claims are timely[4] and cognizable, the Robbinses must prove "the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds" to engage in prohibited conduct. Am. Tobacco Co. v. United States, 328 U.S. 781, 810 (1946). The Robbinses must present "direct or circumstantial evidence that reasonably tends to prove that the [alleged conspirators] had a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 768 (1984). With respect to their § 2 conspiracy to monopolize claim, the Robbinses also must show the alleged conspirators "shared [a] specific intent to create a monopoly . . . or to unreasonably exclude [the Robbinses]." SuperTurf, Inc. v. Monsanto Co., 660 F.2d 1275, 1283 (8th Cir. 1981).

A careful review of the record and the parties' submissions reveals the Robbinses have failed to adduce any competent direct or circumstantial evidence to support their conclusory allegations that the officers conspired with third parties to restrain or monopolize trade in interstate commerce. See Fed. R. Civ. P. 56(c), (e). "Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact." Howard, 363 F.3d at 800; cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007) ("[A] bare assertion of conspiracy will not suffice. Without more, . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). The Robbinses' unsubstantiated belief that the officers illegally conspired against them is insufficient to sustain their Sherman Act claims. The district court did not err in granting summary judgment on these claims.

---

[4]Actions to enforce the Sherman Act must "commence[] within four years after the cause of action accrued." 15 U.S.C. § 15b. An action generally "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971). The Robbinses' allegations date as far back as 1999.

## III. CONCLUSION

We affirm.

LOKEN, Circuit Judge, concurring.

I join the opinion of the court except the Equal Protection Clause analysis in Part II.B.2. As to that Part, I concur in the judgment because plaintiffs failed to make an adequate showing that any officer's discretionary actions were the product of intentional discrimination, malice, or other improper motive.

—————————————————