# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-1366

_____

| | | |
|---|---|---|
| Roger R. Nolan, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Dana D. Thompson; Fannie Gaw; | * | Western District of Missouri. |
| Wayne Crump; Ansel P. Card; | * | |
| Robert Robinson; Penny Hubbard; | * | |
| Jane/John Does, All members of | * | |
| Probation and Parole for the State of | * | |
| Missouri Department of Corrections; | * | |
| Reid Forrester, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 15, 2007
Filed: March 10, 2008

_____

Before WOLLMAN and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Roger Nolan, a Missouri inmate serving a parolable life sentence for first-degree murder perpetrated during the commission of a kidnapping, brought an action

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

against the defendant members of the Missouri Board of Probation and Parole (Board), requesting declaratory and injunctive relief under 42 U.S.C. § 1983 and alleging violations of the ex post facto clause, the due process clause, and the equal protection clause of the federal Constitution. He appeals from the district court's[2] judgment denying his motion for summary judgment, granting summary judgment to the Board, and dismissing the action. We affirm.

## I. Background

Based upon an incident that occurred on November 27, 1981, Nolan pled guilty on March 4, 1983, to a single count of first degree murder perpetrated during the commission of a kidnapping and was sentenced to life imprisonment with the possibility of parole.

The governing parole statute on the date of Nolan's offense was Mo. Rev. Stat. § 549.261 (1978). The Missouri parole regulations promulgated under § 549.261 and in effect when Nolan committed his offense provided the Board with the following options in the event of an adverse decision at an inmate's parole eligibility hearing: a denial of further parole consideration; a set-back or continuance of up to five years; or a request for further information or planning. Mo. Code Regs. Ann. tit. 13, § 80-2.020(2)(A)-(E) (1980). In 1982, the Missouri legislature repealed Mo. Rev. Stat. § 549.261 and enacted Mo. Rev. Stat. § 217.690 in its stead. In 1992, the Missouri legislature revised § 217.690 to state that "[a]ny offender under a sentence for first degree murder who has been denied release on parole after a parole hearing shall not be eligible for another parole hearing until at least three years from the month of the parole denial." Mo. Rev. Stat. § 217.690(5) (1992).

---

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Nolan's first parole hearing was scheduled for 1983. He declined a hearing at that time, but requested a continuance until August 1985. The Board denied him parole in 1985 and scheduled him for an interim review in 1987. Nolan requested two year-long continuances of his 1987 hearing date and had his second hearing in September 1989. Following the Board's adverse decision in 1989, Nolan received reconsideration hearings every two years from 1991 to 2003. The Board consistently stated that the reason for denying Nolan parole was that it would "depreciate the seriousness" of his offense due to the circumstances surrounding it. Nolan appealed the Board's decisions in 1993, 1999, and 2001. The Board's adverse decision in 2003 scheduled Nolan's reconsideration hearing for September 2006 and indicated that the decision was not subject to appeal. The circumstances surrounding Nolan's 2006 hearing are not part of the record on appeal.

Following the filing of Nolan's action, the district court referred the case to a magistrate judge[3] pursuant to 28 U.S.C. § 636(b). The Board moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(b)(6). After responding to the Board's motion, and prior to the magistrate judge's recommendation thereon, Nolan moved for summary judgment. Following the magistrate judge's recommendation that the Board's motion be denied because of the need to consider matters outside the pleadings, the Board also moved for summary judgment. The district court thereafter adopted the magistrate judge's recommendation that the Board's motion for summary judgment be granted and that Nolan's motion be denied and his claims dismissed.

II. Procedural Issues

As a threshold issue, Nolan contends that the district court improperly granted summary judgment because of the inadequate opportunity afforded him for discovery. We review for abuse of discretion the district court's determination that a claim is ripe

---

[3]The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

-3-

for summary judgment.  Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir. 2006) (citing In re TMJ Implants Prod. Liab. Litig., 113 F.3d 1484, 1489 (8th Cir. 1997)). Although the nonmovant must be afforded sufficient time for discovery, id., discovery need not be complete for a district court to grant summary judgment.  Fed. R. Civ. P. 56(c).

In the absence of a Rule 56(f) motion for a continuance accompanied by an affidavit showing what specific facts further discovery might uncover, a district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it.  In re TMJ Implants Prod. Liab. Litig., 113 F.3d at 1490; see also, e.g., Robinson, 439 F.3d at 467; Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997).  Nolan contends that the Board failed to provide him with sufficient responses to his discovery requests.  The discovery period agreed upon by the parties and adopted by the magistrate judge ended March 20, 2006.  Nolan filed for summary judgment on April 17, 2006, the Board filed for summary judgment on May 22, 2006, and the magistrate judge issued his report and recommendations with respect to the motions on November 9, 2006.  At no time during this time period or otherwise did Nolan file a Rule 56(f) motion to delay ruling on the motions for summary judgment; nor did he file a Rule 36(a) motion asking that the district court determine the sufficiency of the Board's responses to his requests for admissions; nor did he file a Rule 37(a) motion to compel the disclosures or documents he needed.  In the absence of any motions of this nature, we cannot say that the district court abused its discretion in granting summary judgment based on the record before it.

We conclude that Nolan's remaining arguments concerning the district court's procedures lack merit, and we now turn to the substantive issues.

## III. Constitutional Issues

We review a district court's grant or denial of summary judgment *de novo*, applying the same standard as the district court. Mayorga v. Mo., 442 F.3d 1128, 1131 (8th Cir. 2006). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56(c)).

### A. Ex Post Facto Claims

Nolan contends that the Board's application of Missouri's changed parole laws to him violated, and violates, the ex post facto clause of the federal Constitution. Specifically, he argues that the Board's scheduling of his reconsideration hearings at three-year intervals pursuant to section 217.690 of the Missouri Code, instead of at the two-year intervals he was afforded prior to the statute's revision, creates a risk of increasing the length of his incarceration.[4]

Taking the facts in the light most favorable to Nolan, we assume that the Board has applied, and is applying, Missouri's current parole statute to him. The retroactive application of changed parole laws may violate the ex post facto clause if it creates "a sufficient risk of increasing the measure of punishment" for Nolan's offense from what it was at the time he committed it. Garner v. Jones, 529 U.S. 244, 250 (2000) (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995) (internal quotation omitted)). Accordingly, we must compare Missouri's current parole laws with those that were in effect at the time of Nolan's offense, keeping in mind that not every

---

[4]Nolan also claims that Missouri's new parole laws eliminate an opportunity for accelerated reconsideration in the event of significant developments or changes in an inmate's status. Since the parole laws in effect at the time of Nolan's offense did not provide for such an opportunity, we do not consider this argument further.

-5-

retroactive procedural change that could affect an inmate's term of confinement creates a risk of constitutional proportions. "[T]he question is a matter of degree" and must be considered within the context of the entire parole system. Id. at 250, 252 (internal quotation omitted). If the new law does not show a sufficient risk on its face, Nolan must "demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id. at 255.

As set forth above, the Missouri parole laws in effect on November 27, 1981, provided the Board with the following options in the event of an adverse decision at an inmate's parole hearing: a denial of further parole consideration; a set-back or continuance of up to five years; or a request for further information or planning. Mo. Code Regs. Ann. tit. 13, § 80-2.020(2)(A)-(E) (1980); see also Mo. Bd. of Probation & Parole, Rules and Regulations Governing the Granting of Paroles, Conditional Releases and Related Procedures 23-26 (1979) [hereinafter Rules and Regulations]. Although "a set-back or continuance usually [would] not be longer than one year" under the 1981 regulations, "in some instances, particularly those inmates serving lengthy sentences, a set-back may be up to a maximum of five (5) years." § 80-2.020(B); see also id. § 80-2.020(G) ("Inmates who are serving long sentences and have received several continuances or set-backs, shall be scheduled for a personal parole hearing before the parole board at least once every five (5) years following their first parole hearing."); Rules and Regulations at 24, 26.

The parole statute in effect at the time of Nolan's 2003 hearing and thereafter, section 217.690, requires a minimum interval of three years between reconsideration hearings for those inmates serving a sentence for first-degree murder. Mo. Rev. Stat. § 217.690(5) (2002) (current version at Mo. Rev. Stat. § 217.690(6) (2005)) [hereinafter section 217.690(6)]. In the event of an adverse parole decision, the statute's corresponding regulations provide the Board with the option to request further information or to schedule a reconsideration hearing, but they do not provide

for the denial of further parole consideration.  Mo. Code Regs. Ann. tit. 14, § 80-2.010(8) (1992).

Like the amendment at issue in <u>Morales</u>, section 217.690(6) "applies only to a class of prisoners for whom the likelihood of release on parole is quite remote" due to the length of their sentences and the severity of their crimes.  514 U.S. at 510. Although section 217.690(6) eliminates the Board's discretion to schedule Nolan's reconsideration hearings at intervals of less than three years, the parole laws in effect at the time of Nolan's offense clearly contemplated a set-back of up to five years between hearings for inmates like Nolan, who is serving a life sentence and who has received several set-backs.  The 1981 regulations also granted the Board the option to deny further parole consideration altogether.  The record lacks evidence that shorter intervals between hearings would likely result in an earlier release under the Missouri parole system.  <u>See</u> <u>id.</u> at 513.  The record also lacks evidence that the Board has scheduled or will schedule Nolan's reconsideration hearings at intervals greater than the maximum contemplated by the 1981 regulations.  Nolan essentially acknowledges that he lacks sufficient evidence to support his claim and requests that we remand the case for additional discovery.  Appellant's Br. at 19-20.  Because Nolan failed to properly raise his discovery issues in the district court, however, and because we have found no error in the district court's decision to grant summary judgment based on the record before it, we decline to do so. We therefore conclude that the Board's scheduling of Nolan's reconsideration hearings at three-year intervals pursuant to § 217.690(6) does not create a sufficient risk of increasing the length of his incarceration in violation of the ex post facto clause.

Nolan also claims that the Board is applying an ex post facto law to him by indicating that its adverse decision in 2003 was unappealable.  Nolan acknowledges, however, that the Board's action was in direct contravention of the parole regulations that were in effect at the time of that hearing and at all relevant times.  Appellant's Br. at 8; <u>see, e.g.</u>, Mo. Code Regs. Ann. tit. 13, § 80-2020(3)(1980); Mo. Code Regs. Ann.

tit. 14, § 80-2010(10) (1992). Nolan's claim fails because he has not identified any law that the Board may be applying to deny him an appeal.

We affirm the district court's dismissal of Nolan's ex post facto claims.

B.      Due Process Claim

Nolan also argues that the Board has failed, and is failing, to provide him with the due process he is entitled to under the Fourteenth Amendment. The due process clause protects liberty interests that arise from either the clause itself or from state law. Mahfouz v. Lockhart, 826 F.2d 791, 792 (8th Cir. 1987) (citing Hewitt v. Helms, 459 U.S. 460, 466 (1983)). The Supreme Court has not recognized a liberty interest in parole release under the federal Constitution. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Instead, it has recognized that "a state may create such a liberty interest when its statutes or regulations place substantive limitations on the exercise of official discretion or are phrased in mandatory terms." Mahfouz, 826 F.2d at 792 (citing, *inter alia*, Greenholtz, 442 U.S. at 11-12). When a state creates a liberty interest in parole release, "minimal due process standards" apply to protect that interest. Dace v. Mickelson, 816 F.2d 1277, 1279 (8th Cir. 1987) (citing Greenholtz, 442 U.S. at 16).

Nolan does not contest that he has no liberty interest in parole release under Missouri law.[5]  Instead, he argues that he is entitled to, and has failed to receive, "minimal due process" in the absence of a statutorily-created liberty interest. Nolan

_____

[5]Although the parole statute in effect at the time of Nolan's offense provided a liberty interest in parole release, see Williams v. Mo. Bd. of Probation & Parole, 661 F.2d 697, 699 (8th Cir. 1981), the new parole statute does not. Ingrassia v. Purkett, 985 F.2d 987, 988 (8th Cir. 1993). Nolan has no continuing liberty interest in the application of the old parole statute. Cavallaro v. Groose, 908 S.W.2d 133, 135-36 (Mo. 1995).

cites a pre-Greenholtz case from Rhode Island, State v. Ouimette, 367 A.2d 704 (R.I. 1976), in support of his position. The Ouimette court did not specify the source of the due process rights that it recognized, though it purported to protect them through application of a Rhode Island postconviction statute. To the extent that Ouimette relies on a liberty interest in parole release under the federal Constitution, that argument has been foreclosed by the Supreme Court's decision in Greenholtz. To the extent it relies on Rhode Island law, it is inapplicable to the laws of Missouri. Accordingly, we affirm the district court's dismissal of Nolan's due process claim.

C.      Equal Protection Claim

Finally, Nolan argues that the Board discriminated, and is discriminating, against him in denying him parole and granting it to others similarly situated. Because Nolan does not allege that he is a member of a protected class or that his fundamental rights have been violated, he must prove that the Board systematically and "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) ("class-of-one" standard); see also Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003). Identifying the difference in treatment is especially important in class-of-one cases for statistical reasons. In the absence of a large number of disadvantaged people sharing a single characteristic, "there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive . . . canvassing of all possible relevant factors." Jennings v. City of Stillwater, 383 F.3d 1199, 1213-14 (10th Cir. 2004). A class-of-one plaintiff must therefore "provide a specific and detailed account of the nature of the preferred treatment of the favored class," especially when the state actors exercise broad discretion to balance a number of legitimate considerations. Id. at 1214-15.

Nolan has failed to provide evidence sufficient to meet this high burden of proof. First, Nolan has failed to prove that the Board intentionally discriminated against him or even denied him parole on an irrational basis. Instead, the record reveals that the Board has consistently given a facially legitimate reason for denying Nolan parole, and there is no evidence that the Board's stated reason is pretextual. Nolan asks us to infer that the Board has intentionally discriminated against him from his assertions that he has an excellent institutional record and that the circumstances surrounding his case are not as heinous as those in other cases. We decline to do so.

The Board has discretion to consider a wide range of individualized factors in making parole decisions. In support of his equal protection claim, Nolan merely provided a spreadsheet listing the names of approximately twenty other inmates, together with their races, the names of their offenses, sentence length, time served, parole hearing dates, and release dates. He also referenced court cases detailing the crimes of two other inmates serving life sentences for first-degree murder who allegedly were paroled after a term of imprisonment shorter than that which Nolan has served. We conclude that this evidence does not provide the requisite "comprehensive . . . canvassing of all possible relevant factors," nor does it "provide a specific and detailed account of the nature of the preferred treatment of the favored class." Id. at 1214.

The record also lacks sufficient evidence about Nolan's own parole file to enable a meaningful comparison between him and those he claims are similarly situated. As with his ex post facto claim, Nolan essentially admits that he lacks sufficient evidence to support his claim and requests that we remand the case for additional discovery, a request that we decline. We therefore affirm the district court's dismissal of Nolan's equal protection claim.

Because we have determined that Nolan has not met his burden of proof with respect to his equal protection claim, we do not reach the issue of whether the Board was entitled to absolute immunity with respect to Nolan's request for injunctive relief.

The judgment is affirmed.

_____